422 So.2d 138 (1982)
STATE of Louisiana
v.
Clarence SIMMONS and Sammy Bernard.
No. 81-KA-2990.
Supreme Court of Louisiana.
November 5, 1982.
Rehearing Denied December 17, 1982.
*140 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., Catherine M. Estopinal, Dale G. Cox, Asst. Dist. Attys., for plaintiff-appellee.
John Ford McWilliams, Jeanette Garrett, Shreveport, for defendant-appellant.
CALOGERO, Justice.
The convictions of these defendants, Clarence Simmons and Sammy Bernard, for attempted simple burglary of the Medic Pharmacy in Shreveport, Louisiana on December 9, 1978, is before us on this appeal for the second time. Originally charged with the completed offense and convicted of attempt, defendants on their first appeal succeeded in having their convictions reversed in this Court and new trials ordered.
We found reversible error in the trial court's failure to sustain defendant's challenges for cause of a prospective juror who was employed as a deputy sheriff. State v. Simmons and Bernard, 390 So.2d 1317 (La. 1980).
On remand the bill of information was amended to charge attempted simple burglary of a pharmacy and defendants were *141 again convicted of that crime by a twelve person jury.
Following the convictions Bernard was adjudged a third felony offender and sentenced to "a period of nine years ... as the law requires." Simmons was adjudged a fourth felony offender and sentenced "to be confined at hard labor for a period of natural life ... subject to the conditions provided by law."
In this joint appeal we find that only Simmons' assignments of error numbers 39 and 44 concerning his adjudication as a fourth felony offender and sentence to life imprisonment have merit. Therefore defendant Bernard's conviction and sentence will be affirmed. Simmons' conviction will be affirmed, but his sentence is set aside.
In this opinion we will treat defendants' common assignments relative to the trial court's refusal to give requested jury charges and relative to an asserted restriction of defense counsel's voir dire examination of prospective jurors; we will also treat Simmons' meritorious assignment attacking his adjudication as a fourth felony offender and concomitant illegal sentence to life imprisonment.
We find that none of the remaining assignments of error present reversible error, nor do any involve legal issues not governed by clearly established principles of law. They will be treated in an appendix which will not be published but which will comprise part of the record in this case.

SIMMONS' ASSIGNMENT OF ERROR NO. 32

BERNARD'S ASSIGNMENT OF ERROR NO. 51
Defendants contend that the lower court erred in refusing to give two requested jury charges. The trial judge instructed the jury that the only possible verdicts were "guilty of attempted simple burglary of a pharmacy" and "not guilty." The defense requested jury charge No. 1, which the trial judge refused to give, read, "In order to find the defendants guilty as charged you must find that an attempted unauthorized entry was made solely for the purpose of obtaining controlled dangerous substances as defined by law."
La.C.Cr.P. art. 802 requires that the judge charge the jury as to the law applicable in the case. State v. Clement, 368 So.2d 1037 (La.1979); State v. Marse, 365 So.2d 1319 (La.1978). Special requested charges are governed by La.C.Cr.P. art. 807 which provides, in part, that a special charge shall be given by the court if it does not require qualification, limitation or explanation, and if it is wholly pertinent and correct. State v. Green, 418 So.2d 609 (La. 1982). This charge, however, must be supported by the evidence. State v. Telford, 384 So.2d 347 (La.1980). This is a corollary of the trial judge's basic obligation to charge the jury as to the law applicable to the case, under which he is required to cover every phase of the case supported by the evidence whether or not accepted by him as true. La.C.Cr.P. art. 802; State v. Miller, 338 So.2d 678 (La.1976).
Nevertheless, it is well-settled that requested charges which are already substantially given and covered by the trial court's general charge are properly refused. C.Cr.P. art. 807; State v. Matthews, 380 So.2d 43 (La.1980); State v. Mead, 377 So.2d 79 (La.1979); State v. Badon, 338 So.2d 665 (La.1976); State v. White, 254 La. 389, 223 So.2d 843 (1969).
The trial court's given charge defined simple burglary of a pharmacy according to the statute. It included the fact that an essential element of pharmaceutical burglary under La.R.S. 14:62.1 is the intended theft of substances enumerated under La.R.S. 40:961(7). The judge was therefore not required to give the defendants' requested charge which was essentially to the same effect.
Defense requested jury charge No. 2, which the trial judge refused to give, told the jury that criminal trespass, [R.S.-14:63.10] a misdemeanor which proscribes "[t]he unauthorized and intentional entry upon *142 any [b]uilding ...."[1] is a lesser included offense for the charged crime, attempted simple burglary of a pharmacy,[2] and a responsive verdict which the jury was at liberty to bring in.
The trial judge was apparently willing to charge the jury that both criminal trespass and attempted simple burglary were responsive to the charged attempted simple burglary of a pharmacy. Because counsel for the defendants opposed the judge's giving the latter instruction, the judge determined that he would give neither.
The charged offense (attempted simple burglary of a pharmacy) is not one of those crimes listed at La.C.Cr.P. art. 814 as to which there are statutorily listed responsive verdicts. Criminal trespass does nonetheless appear to be a responsive verdict to simple burglary of a pharmacy under La.C. Cr.P. art. 815 since it is a lesser and included grade of the offense, even though just a misdemeanor, the greater offense facially including as it does all the elements of the lesser offense. La.R.S. 14:5; State v. Dauzat, 392 So.2d 393 (La.1980); State v. Booker, 385 So.2d 1186 (La.1980) on rehearing; State v. Turnbull, 377 So.2d 72 (La.1979); State v. McCoy, 337 So.2d 192 (La.1976); State v. Roberts, 213 La. 559, 35 So.2d 216 (1948). Criminal trespass includes the unauthorized and intentional entry upon any building, dwelling, etc., whereas simple burglary of a pharmacy entails the unauthorized entry of any building, warehouse, etc., used for the storage and/or dispensing of controlled dangerous substances with the intent to commit theft of those controlled dangerous substances.
However, criminal trespass is not clearly a lesser and included offense of attempted simple burglary of a pharmacy, the charge for which these defendants were prosecuted. In the oft-quoted clarifying definition of lesser and included offense in State v. Poe, this Court stated:
In reaching the conclusion in the instant case that a verdict of simple assault is responsive to the charge of attempted simple kidnapping, it was reasoned that `* * * all that is required is that the greater offense must include all the elements of the lesser offense in order to make a verdict of the lesser offense responsive.' We now find that this statement is not entirely accurate for, as we observed in the Roberts case, the test is whether the definition of the greater offense necessarily includes all the elements of the lesser. Stated in another way for practical application, this merely means that, if any reasonable state of facts can be imagined wherein the greater offense is committed without perpetration of the lesser offense, a verdict for the lesser cannot be responsive. 214 La. 606, 38 So.2d 359, 363 (1948), on rehearing.
*143 There are circumstances which can be reasonably imagined in which a defendant could be convicted of the attempted crime of burglary or burglary of a pharmacy without the unauthorized and intentional entry required by the trespass statute.
Attempted simple burglary of a pharmacy could conceivably be accomplished by a person who does not actually go upon the premises. Under the Louisiana attempt statute, R.S. 14:27, mere preparation is not sufficient; however, an attempt conviction is possible if one, having the necessary specific intent, "does or omits an act for the purpose of and tending toward the accomplishing of his object ... and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose." Thus it is possible that a person, approaching an entrance or standing next to a window armed with burglary tools, coupled perhaps, with other evidence concerning his purpose, could be convicted under the attempt statute. Since the greater offense of attempted simple burglary of a pharmacy could possibly be committed without the perpetration of the lesser offense of criminal trespass, criminal trespass according to the jurisprudential definition is not truly a lesser and included offense of attempted simple burglary of a pharmacy. The judge would therefore not be required to charge the jury on criminal trespass under La.C.Cr.P. art. 803.
Furthermore defendant insisted that criminal trespass be charged, but he objected to the court's charging the jury on the more obvious lesser included offense of attempted simple burglary. Even were defendant correct, that criminal trespass is a lesser included offense of attempted simple burglary of a pharmacy, his requested charge containing criminal trespass but excluding attempted simple burglary was not wholly correct and pertinent. La.C.Cr.P. art. 807. Under these circumstances, the trial judge's not giving the charge that criminal trespass is a lesser included offense did not constitute reversible error.

SIMMONS' ASSIGNMENT OF ERROR NO. 6

BERNARD'S ASSIGNMENT OF ERROR NO. 23

RESTRICTION OF DEFENSE COUNSEL'S VOIR DIRE EXAMINATION
By these assignments attorneys for the defense contend that the trial court erred in curtailing the defense voir dire examination. The improper restriction denied the defendants a fair trial, they contend.
Defense counsel Mr. Minor attempted to explore the jurors' attitudes toward a defendant who should remain silent at trial. After he had successfully questioned at least two prospective jurors in this area, the following exchange occurred:
Q. Mr. O'Neal, do you think that you would want to hear from either person because of
MR. INDERBITZIN: Your Honor, I would object to the form of that question. Mr. Minor is saying would you want to hear, not can you render an impartial verdict. The juror is trapped in a situation where if they say don't, they indicate they don't care what the men have to say. If they do want to hear from them, they can't respect their Fifth Amendment rights. I think the question is somewhat phrased as a catch twenty-two type of thing. I object to the form of the question.
THE COURT: You might have to either rephrase the question or go into it further with the jurors.
Counsel began to explore another area of questioning, but returned to the issue of defendants' silence at trial:
Q. Mrs. Smith, do you think that you would want to hear some explanation of why you should find the defendant not guilty here? Some explanation from them before you could vote not guilty?
A. Yes.
The state again objected; the court replied:
THE COURT: I will have to hear the next question to see if he goes into it further.

*144 EXAMINATION BY MR. MINOR:
Q. Do I understand your answer to be that you would want to?
A. Yes.
Q. Do you understand the law says that you cannot require to hear something from the defendant?
A. Yes.
Q. Or that you cannot take the fact that he chooses not to testify to affect your judgment. You are not to infer guilt on a defendant's decision not to testify.
A. Yes.
Q. Do you understand that?
A. Yes.
Q. So, again, do you think that even though the law says, do you think you would want to hear?
MR. INDERBITZEN: Your Honor, the same objection again as phrased. I understand what counsel is getting at. I don't object to that. I just have trouble with the phrasing because the question is yes or no. Either way the juror answers it appears either she is disregarding a constitutional right on one hand or not caring what he says. I don't think the question is phrased properly.
THE COURT: Objection will be sustained. You may go into the area as long as you follow up with the question as to whether the juror would follow the law.
Defense counsel then continued questioning concerning the right to remain silent.
EXAMINATION BY MR. MINOR:
Q. Mrs. Smith, you say that you want you think that you would want to hear from the defendants; is that correct?
A. Yes.
Q. You say you think you understand that the law does not require that they testify?
A. No. I don't guess so.
Q. You say you understand that?
A. Yeah, understand that.
The state argues that the defense was allowed to continue questioning as to the role of silence on the part of the defendants at trial; counsel was only asked to rephrase or further pursue the jurors' acceptance of the law. Even after the state's objection had been sustained, the judge permitted further discussion in the area. Defendants contend that the issue of whether the prospective jurors would infer guilt by the defendants' decision not to testify was crucial since both defendants remained silent at trial. The state, however, objected only to the phrasing of the defense question, not to its substance.
Defendants contend that the defendant must be given wide latitude in examining prospective jurors in order to secure information for the intelligent exercise of peremptory challenges or challenges for cause. This is a well-settled principle constitutionally and jurisprudentially. La. Const., 1921, art. I, § 10; La.Const. art. I, § 17; State v. Hawkins, 376 So.2d 943 (La. 1979); State v. Holmes, 347 So.2d 221 (La. 1977); State v. Monroe, 329 So.2d 193 (La. 1975). From a review of the entire voir dire it can be readily seen that the defense attorneys were not unreasonably restricted in the questioning of prospective jurors.
Additionally the defense in no way objected to the court's ruling in this matter; therefore, the error cannot be urged for the first time on appeal. La.C.Cr.P. art. 841. After the court's ruling, defense counsel continued to question jurors on the defendants' right to remain silent pursuant to the court's admonitions. These assignments therefore lack merit.

SIMMONS' ASSIGNMENTS OF ERROR NOS. 39 AND 44

FOURTH FELONY ADJUDICATION AND EXCESSIVE SENTENCE OF LIFE IMPRISONMENT
By Assignment of Error No. 39 counsel for defendant Simmons contends that the trial court erred in adjudging Simmons a fourth felony offender; by Assignment of Error No. 44 he argues that the resultant sentence of life imprisonment was excessive and illegal. According to testimony and documents introduced at the habitual offender hearing, the state asserted that Simmons *145 had three convictions which could be used for enhancement, excluding the instant offense:
(1) February 12, 1954, guilty plea for manslaughter committed on October 31, 1953;
(2) February 14, 1966, guilty plea for attempted simple burglary committed on August 8, 1965;
(3) July 1, 1966, guilty plea in federal court for bank robbery, committed on February 11, 1966.
The scheme of R.S. 15:529.1 B which governs determination of the offender's multiple status (second, third or fourth offender) entails enhancing the status for the commission of a given felony if the commission follows the conviction of an earlier felony which caused him to be an offender of a lesser status. For example, to become a second felony offender he must commit the felony after having been convicted for the commission of his first felony offense, and so forth.[3]
This Court in State ex rel Jackson v. Henderson, 283 So.2d 210, 212 (La.1973), stated:
The plain meaning of the statute as it now stands requires that in order for one to be considered a second offender, the second offense must have been committed after the first conviction. To be a third offender the third offense must have been committed after the conviction which caused him to be a second offender, and the fourth offender is one who commits a felony after the conviction which caused him to be a third offender. Bennett [Criminal Law and Procedure, 17 La. L.Rev. 60-61 (1956)]. The severity of the Habitual Offender Law requires that it be strictly construed. State v. Duncan, 219 La. 1030, 55 So.2d 234 (1951); State v. Bailey, 165 La. 341, 115 So. 613 (1928); State v. Kierson, 140 La. 31, 72 So. 799 (1916).
We also stated in State v. Taylor, 347 So.2d 172, 184 (La.1977):
Under our holding in Schamburge, both theft offenses must be treated as one offense in applying the multiple offender statute because the defendant had not been convicted of the first theft prior to the commission of the second. LSA R.S. 15:529.1 B; State ex rel Jackson v. Henderson, La., 283 So.2d 210 (1973).
See also State v. Schamburge, 344 So.2d 997 (La.1977); State v. Chapman, 367 So.2d 808 (La.1979).
In State v. Wimberly, 414 So.2d 666, 673 (La.1982) Justice Dennis, writing for the Court, stated:
The consistent application of our multiple offender statute and our repeated offense statutes over the years has been that prior convictions, in order to be available for imposition of a greater punishment as a subsequent offender, must precede the commission of the principal offense, that is, the latest prosecution in point of time.
* * * * * *
In fact, the multiple offender statute was amended in 1956 to avoid a contrary interpretation by this court. See State v. Williams, 226 La. 862, 77 So.2d 515 (1955); Act No. 312 of 1956. The multiple offender statute has ever since provided `that the offender shall be deemed a second offender only if the crime resulting *146 in the second conviction shall have been committed after his first conviction.' La.R.S. 15:529.1(B).
The only deviation from the general rule seems to be our DWI statute which was amended in 1978 to provide that `[o]n a second conviction, regardless of whether the second offense occurred before or after the first conviction, the offender shall be' given enhanced punishment. La.R.S. 14:98. The exception proves the general rule that, unless otherwise expressly provided, the offender shall be deemed a second offender only if the crime resulting in the second conviction shall have been committed after his first conviction.
Since defendant's third listed felony above (bank robbery) was committed on February 11, 1966, three days before he was convicted on February 14, 1966, for the second listed felony (attempted simple burglary), that third crime, bank robbery, does not make defendant eligible to be charged as a fourth felony offender for the commission in 1978 of the present crime.[4]
A contrary interpretation of the statute is not impossible. The statutory language "which in fact caused him to be a third offender"[5] perhaps could be interpreted to mean the crime which caused him to be the perpetrator of three felonies. However, that interpretation is neither logical nor consistent with the scheme of the Habitual Offender Law. The language should be interpreted as it was obviously intended, i.e., "which caused him to be a third offender" in the legal sense, and as set forth in the statute. The obvious intent of La.R.S. 15:529.1 is to set up a sequential requirement; the third felony must be committed after the conviction responsible for the second offender status. This construction is consistent with the jurisprudence of Louisiana and the case law of other states.[6]
The A.L.R. Annotation on Habitual Criminal Statutes, 24 A.L.R.2d 1248-80 (1952), and its Later Case Service cites a number of Louisiana cases in its placing Louisiana with the majority of states which requires "that the prior conviction or convictions precede the commission of the principal offense in order to enhance the punishment under habitual criminal statutes." 24 A.L. R.2d at 1249. The Annotation lists several of the cases already cited in this opinion as well as State v. Neal, 347 So.2d 1139 (La. 1977), a decision citing the Annotation, which involves La.R.S. 14:98 before its clarifying amendment in 1978. Justice Tate for the majority in State v. Neal utilizes La. R.S. 15:529.1 by analogy, traces the history of enhanced penalty statutes, and concludes:
Consonant with the general purpose of enhanced punishment statutes, the most reasonable legislative intent to ascribe to the more serious punishment accorded for a subsequent `conviction' by La.R.S. 14:98 is that, if following conviction of the offense, the offender repeats the prohibited conduct, he is then subject to enhanced penaltybut not if, after the first conviction has put him on notice of the possibility of more severe punishment, the offender takes heed and reforms. 347 So.2d at 1142.
Even more supportive of this interpretation in Louisiana is the dissent by Justice Summers in Neal. Justice Summers did not *147 agree with Justice Tate's analogy. However he clearly enunciated the obvious requirements of the Habitual Offender Law:
The defense contention that Article 98 should be considered in the light of the Habitual Offender Law because they are statutes in pari materia is also untenable. If this argument were adopted, the second offense under Article 98 would also have to occur after conviction of the first as the Habitual Offender Law requires.

* * * * * *
If the legislature had intended that the second offender statute should be based upon offenses and convictions which occurred in chronological sequence as relator contends, such a limitation would have been stated as it was in the Habitual Offender Statute. 347 So.2d at 1144-45.
The defendant Simmons thus could only have properly been convicted of being a third felony offender.
The state agrees with the foregoing, but contends that as a third felony offender Simmons should still receive a mandatory life sentence under La.R.S. 15:529.1 A(2)(b), which states:
(b) If the third felony and each of the two prior felonies involved a violation of R.S. 14:34 [aggravated battery], R.S. 14:62.1 [simple burglary of a pharmacy], R.S. 14:65 [simple robbery], R.S. 14:110(B) [aggravated escape], or any crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
The state argues that attempted simple burglary of a pharmacy "involved a violation of ... R.S. 14:62.1" (simple burglary of a pharmacy), for the facts clearly showed that the actual burglary, rather than simply an attempt, had been committed. The argument is not meritorious. The language of the Habitual Offender Law must be strictly construed. State ex rel Jackson v. Henderson, 283 So.2d 210 (La. 1973); State v. Duncan, 219 La. 1030, 55 So.2d 234 (1951). When the statute speaks of a felony which "involved" a violation of La.R.S. 14:62.1, it means that the conviction must be that of simple burglary of a pharmacy, not the lesser crime of attempted simple burglary of a pharmacy.
Thus as a third felony offender the defendant is punishable not under 15:529.1 A(2)(b) but rather under 15:529.1 A(2)(a).[7]
He should therefore not receive more than twice the longest possible sentence prescribed for a first conviction of attempted simple burglary of a pharmacy. Applying 15:529.1 A(2)(a) (not more than twice) in conjunction with La.R.S. 14:62.1 (nine years maximum) and R.S. 14:27 D(3), (one-half for attempt, 4.5 in this case),[8] the maximum possible sentence would then have been nine years (2 X 4.5). The defendant's sentence to life imprisonment is therefore in excess of that provided by law. The case will be remanded for the sentencing of defendant Simmons as a third felony offender.

*148 Decree

For the foregoing reasons the conviction and sentence of defendant Bernard is affirmed. The conviction of defendant Simmons is affirmed, but his sentence to life imprisonment is set aside, and his case remanded to the district court for resentencing in accordance with law.
DEFENDANT BERNARD'S CONVICTION AND SENTENCE AFFIRMED; DEFENDANT SIMMONS' CONVICTION AFFIRMED, SENTENCE VACATED, REMANDED FOR RESENTENCING.
LEMMON, J., dissents from reversal to the sentence and assigns reasons.
LEMMON, Justice, dissenting from reversal of sentence.
Defendant's third felony (the one for which defendant was tried and convicted in the proceeding now on appeal) clearly "involved a violation of ... R.S. 14:62.2 [simple burglary of a pharmacy]".
Significantly, the Legislature in drafting R.S. 15:529.1 A(2)(b) used the broad term "involved a violation of" rather than the narrower term "were convictions of". The use of the broader term indicates a legislative intent for the subsection to be applicable not only to convictions of the completed offenses, but also to convictions of an attempt to commit the enumerated offenses.[1]
Moreover, the obvious purpose of R.S. 15:529.1 A(2)(b) is to provide stern punishment when the convicted criminal's third felony involved serious criminal conduct relating to the enumerated serious felonies. The incident which brought about defendant's third felony conviction in the present case clearly involved conduct relating to one of the enumerated felonies for which the Legislature prescribed severe punishment. Since it was the conduct of a repeat offender (rather than the success of the attempt) that the Legislature intended to deter by specifying harsh penalties for such conduct by repeat offenders, it is of no great moment whether defendant's conduct in attempting a pharmacy burglary resulted in a successful burglary.
The majority's narrow interpretation of R.S. 15:529.1 A(2)(b), simply because the law is harsh, frustrates the Legislature's efforts to deal harshly with two-time losers who attempt (successfully or unsuccessfully) to commit a pharmacy burglary. The result is that one of the exact criminals for whom harsh multiple offender laws were designed will now receive a relatively short sentence, instead of the life sentence the Legislature intended.
NOTES
[1] La.R.S. 14:63.10 as it appeared in 1978 stated in pertinent part:

A. Criminal trespass in the parish of Caddo is:
(1) The unauthorized and intentional taking possession of any tract of land or structure thereon without the consent of the owner thereof; or
(2) The unauthorized and intentional entry upon any:
(c) Building, dwelling structure, watercraft or movable, whether or not the same is posted or enclosed;
The pertinent section of the currently applicable statute, R.S. 14:63, defines criminal trespass throughout the state as follows:
A. No person shall without authorization intentionally enter any structure, watercraft, or movable.
B. No person shall intentionally enter immovable property owned by another:
(1) when he knows his entry is unauthorized, or
(2) under circumstances where he reasonably should know his entry is unauthorized....
[2] The pertinent section of La.R.S. 14:62.1 states:

A. Simple burglary of a pharmacy is the unauthorized entry of any building, warehouse, physician's office, hospital, pharmaceutical house, or other structure used in whole or in part for the sale, storage and/or dispensing of controlled dangerous substances, as defined in R.S. 40:961(7), with the intent to commit the theft of any drug which is defined as a controlled dangerous substance in R.S. 40:961(7) other than set forth in R.S. 14:60.
[3] La.R.S. 15:529.1(B) states that:

It is hereby declared to be the intent of this Section that an offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as, and adjudged to be, a third offender, or that an offender have been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime. Provided, however, that the offender shall be deemed a second offender only if the crime resulting in the second conviction shall have been committed after his first conviction; that one shall be deemed a third offender under this Section only if the crime resulting in the third conviction shall have been committed after his conviction for a crime which in fact caused him to be a second offender, whether or not he was adjudged to be a second offender in the prior instance; and that one shall be deemed to be a fourth offender under this Section only if the crime resulting in the fourth conviction shall have been committed after his conviction for a crime which in fact caused him to be a third offender, whether or not he was adjudged to be a third offender in the prior instance.
[4] That does not mean of course that a person who has committed four crimes in sequence, each of them following the conviction of the earlier one but never before sentenced as a multiple offender, may not be charged as a fourth felony offender. See La.R.S. 15:529.1 B.
[5] La.R.S. 15:529.1(B). See footnote 3 supra, for the entire text of the statute.
[6] The Later Case Service for Annot., 24 A.L. R.2d 1248-1280 (1952) at 548-50, cites numerous cases from other jurisdictions that so interpret the habitual offender laws of other states: Winstead v. State, 91 So.2d 809 (Fla.1957); Cooper v. State, 259 Ind. 107, 284 N.E.2d 799 (1972); House v. Commonwealth, 466 S.W.2d 949 (Ky.App.1971); State v. Johnson, 109 N.J. Super. 69, 262 A.2d 238 (1970); State v. Valenzuela, 94 N.M. 285, 609 P.2d 1241 (1979), affmd, 94 N.M. 340, 610 P.2d 744 (1980); People v. Gillman, 49 A.D.2d 951, 374 N.Y.S.2d 139 (1975); Haines v. States, 391 S.W.2d 58 (Tex. Cr.App.1965); Cortez v. State, 314 S.W.2d 589 (Tex.Cr.App.1958); Ex parte Daniels, 158 Tex. Cr.R. 2, 252 S.W.2d 586 (1952).
[7] La.R.S. 15:529.1 A(2)(a) states:

A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government or country of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(2) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then,
(a) The person shall be sentenced to imprisonment for any term not less than one-half the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction....
[8] La.R.S. 14:27 D(3) states:

D. Whoever attempts to commit any crime shall be punished as follows:
* * * * * *
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
[1] Inasmuch as an attempt requires the specific intent to commit the pertinent crime, defendant's attempt literally and logically "involved a violation of the statute defining the crime.